UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-14046-CIV-MOORE/LYNCH

ARI BEN-YISHAY, M.D. and
BARBARA BEN-YISHAY,

    Plaintiffs,

vs.

MASTERCRAFT DEVELOPMENT, LLC,
et al.,

    Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND/OR COMPEL ARBITRATION

THIS CAUSE came before the Court upon Defendant Waterline Development LLC's Motion to Dismiss Complaint and/or Motion to Compel Arbitration (dkt # 24), Defendant Joseph D. Grosso, Jr., P.A. and Joseph D. Grosso, Jr.'s Motion to Dismiss (dkt # 25), and Defendants Mastercraft Development LLC, Mastercraft Services, Inc., and Perry Lap's Motion to Dismiss Complaint and Compel Arbitration (dkt # 26).

UPON CONSIDERATION of the Motions, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.     BACKGROUND

This action arises from a failed agreement concerning the construction of three single-family homes.[1] On September 17, 2005, Dr. Ari Ben-Yishay and his wife, Barbara Ben-Yishay (together the "Ben-Yishays") entered into a Construction, Purchase and Sale Agreement (the "First

---

[1] The facts here are taken from the complaint.

Agreement") with Defendants Mastercraft Development, LLC ("Mastercraft") and Mastercraft Services ("MS"). Perry Lap ("Lap"), the managing member of Mastercraft and president of MS, negotiated the Agreement on behalf of Mastercraft and MS. Under the agreement, the Ben-Yishays were to purchase a lot and pre-construction home to be built by Mastercraft and MS in Tesoro Preserve, located in Port St. Lucie, Florida. The Ben-Yishays were unaware that the lot was under the control of Defendant Waterline Development, LLC ("Waterline"), which was also a managing member of Mastercraft.

Under the First Agreement, the Ben-Yishays were to pay $2.5 million for the lot and construction of the home, with construction to be completed within 12 months after issuance of all applicable building permits. The Ben-Yishays were obligated to deliver $250,000 as an earnest money deposit. However, the Ben-Yishay's decided to make an additional earnest money deposit of $250,000, making the total amount deposited $500,000. The funds were allegedly to be placed in escrow with Defendant Joseph D. Grosso, Jr., P.A. ("Grosso PA") acting as escrow agent. The balance was to be paid at closing. In addition, the Ben-Yishays agreed to lease the newly constructed home to Mastercraft and MS as a model home for $12,000 per month for 18 months. On September 17, 2005, the Ben-Yishays issued a check payable to Mastercraft for $250,000. On January 15, 2006, the Ben-Yishays issued a second check for $250,000 payable to Mastercraft. On January 16, 2006, the First Agreement was amended to reflect the $500,000 payment.

In March of 2006, the Ben-Yishays decided to purchase a second lot and pre-construction home in Tesoro Preserve, to be built by Mastercraft and MS. On March 29, 2006, a Second Construction, Purchase and Sale Agreement (the "Second Agreement") was entered into. Under the Second Agreement, the Ben-Yishays were to pay $3.2 million for the lot and construction of the

home, with construction to be completed within nine months after issuance of all applicable building permits. The Ben-Yishays were obligated to pay $320,000 as an earnest money deposit, allegedly to be placed in escrow with Grosso PA acting as the escrow agent. The balance was to be paid at closing. In addition, the Ben-Yishays agreed to lease the newly constructed home to Mastercraft and MS as a model home for $15,000 per month for 18 months. On April 5, 2006, the Ben-Yishays issued a check for $320,000 payable to Mastercraft.

In July of 2006, the Ben-Yishays decided to purchase a third lot and pre-construction home in Tesoro Preserve, to be built by Mastercraft and MS. On July 14, 2006, a Third Construction, Purchase and Sale Agreement (the "Third Agreement") was entered into. Under the Third Agreement, the Ben-Yishays were to pay $1.75 million for the lot and construction of the home, with construction to be completed within nine months after issuance of all applicable building permits. The Ben-Yishays were obligated to pay $175,000 as an earnest money deposit, allegedly to be placed in escrow with Grosso PA acting as the escrow agent. The balance was to be paid at closing. In addition, the Ben-Yishays agreed to lease the newly constructed home to Mastercraft and MS as a model home for $8,000 per month for 18 months. On October 9, 2006, the Ben-Yishays issued a check for $175,000 payable to Mastercraft. As an incentive to enter into the Third Agreement, the Ben-Yishays were offered an incentive package, which provided certain discounts and benefits to each of the three lots purchased.

By May of 2007, no construction had commenced on any of the three lots. The delays were attributed to revisions in the plans and by the inability of Mastercraft and MS to obtain financing. In August of 2007, Mastercraft and MS offered to reduce the price of the lots if the Ben-Yishays would obtain financing for construction. The Ben-Yishays declined. On October 7, 2007, the Ben-Yishays,

Mastercraft and MS agreed that if financing was not obtained within six weeks, the earnest money deposits, totaling $995,000, would be returned. The Ben-Yishays never received the money, and no accounting of the use of the funds was provided.

On February 6, 2008, the Ben-Yishays filed a Complaint (dkt # 1) alleging anticipatory repudiation and breach of contract against Mastercraft and MS with respect to the First, Second and Third Agreements (collectively, the "Agreements"). The complaint also alleged fraudulent misrepresentation against Mastercraft, MS and Lap; fraudulent inducement against Mastercraft, MS and Lap; conversion against Mastercraft, MS and Lap; imposition of an equitable lien or constructive trust as to property owned by Waterline, Mastercraft, and MS; and breach of fiduciary duty against Grosso PA and Joseph D. Grosso, Jr. ("Grosso").

## II.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). A complaint must contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). However, as long as the allegations rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery

is very remote and unlikely.'" Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (*overruled on other grounds by* Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959-60 (2007) (citation omitted)).

### III.   ANALYSIS

The validity of an arbitration agreement is covered by the Federal Arbitration Act ("FAA"). *See* Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir. 2002). The FAA provides, in relevant part:

> [A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be *valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). The FAA also provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in the proceeding with such arbitration.

9 U.S.C. § 3.

"The FAA establishes a 'federal policy favoring arbitration . . . requiring that [courts] rigorously enforce agreements to arbitrate.'" Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). "The question of whether a contract creates a duty for the parties to arbitrate the particular grievance is an issue for judicial determination." Senti v. Sanger Works Factory, Inc., No. 06-cv-1903-Orl-22DAB (ACC), 2007 WL 1174076, at *4 (M.D.Fla. 2007). "'The Arbitration Act establishes that, as a

5

matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Creative Tile Mktg., Inc. v. SICIS Int'l. S.r.L., 922 F. Supp. 1534, 1538-39 (S.D.Fla. 1996) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 626 (1985)). Although the FAA governs the applicability of arbitration agreements, state law governs issues "concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987). Thus, defenses such as fraud, unconscionability and duress are governed by state law. Dale v. Comcast, 498 F.3d 1216, 1219 (11th Cir. 2007).

Each of the Agreements contain an identical arbitration provision which provides:

> **RESOLUTION OF DISPUTES BY ARBITRATION.** All claims and disputes relating to this Agreement shall be governed by and submitted to binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association (the "AAA"). Both parties agree that arbitration shall be the sole and exclusive forum for resolving all claims and disputes relating to this Agreement. This Agreement shall be governed by, construed, and enforced in accordance with the internal laws of the State of Florida, without regard to principles of conflicts of laws, and any proceeding arising out of or relating to this Agreement will be brought in the courts of record of the State of Florida in the County where the Property is located.

First Agreement, ¶ 18; Second Agreement, ¶ 15; Third Agreement, ¶ 15. The Agreements are contracts providing for resolution by way of arbitration of claims and disputes arising out of the contracts. Therefore, under the terms of § 2 of the FAA, the arbitration clauses in the Agreements are valid, irrevocable and enforceable, absent an applicable defense under state contract law.

However, pursuant to the language of the arbitration clause itself, only controversies "relating to" the Agreements are subject to arbitration. Arbitration clauses that require arbitration for disputes "relating to" a contract are considered to be broad provisions. See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 758 (11th Cir. 1993) (finding that arbitration clause including

language that it governed claims "arising out of or relating to" the contract was sufficiently broad to cover related tort claims); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc., 741 F.2d 342, 344 (11th Cir. 1984) (finding that arbitration clause was broad because it governed claims "arising out of or relating to"); Olsher Metals Corp. v. Olsher, No. 01-3212-CIV (AJ), 2003 WL 25600635, at *5 (S.D.Fla. 2003) (stating that arbitration clause applicable to "all disputes relating in any way to" the contract was a broad provision).

A.  Arbitration of Claims Against Mastercraft and MS

Plaintiffs assert claims for anticipatory repudiation against Mastercraft and MS (Counts I-VI); breach of contract against Mastercraft and MS (Count VII-XII); fraudulent misrepresentation against Mastercraft, MS and Lap (Count XIII-XV); fraudulent inducement against Mastercraft, MS and Lap (Counts XVI-XVIII); conversion against Mastercraft, MS and Lap (Counts XIX-XXI); equitable lien and/or constructive trust against Waterline, Mastercraft, and MS (Counts XXIV-XXVI); and breach of fiduciary duty against Grosso PA and Grosso (Counts XXVII-XXVIII).[2]  However, only Mastercraft and MS were signatories to the Agreements.

Plaintiffs' claims of anticipatory repudiation and breach of contract against Mastercraft and MS (Counts I-XII) are referable to arbitration because they are indistinct from the obligations contained in the Agreements.  Plaintiffs' conversion claims against Mastercraft and MS (Counts XIX-XX) are also referable to arbitration because the Agreements governed the manner in which the funds forming the basis of the conversion claim were to be held and disbursed.  First Agreement Addendum, ¶ 1(c); Second Agreement, ¶ 1(b); Third Agreement, ¶ 1(b).  Therefore, the conversion

---

[2]  Counts XVIII through XXI are included in the complaint twice.  There is no Count XXII or XXIII.

claims against Mastercraft and MS also relate to the Agreements and are referable to arbitration. *See* Bullard v. Capital One, F.S.B., 288 F. Supp.2d 1256 1258-59 (N.D.Fla. 2003) (finding that conversion claim was referable to arbitration because the account from which the funds were taken was governed by the agreement).

Plaintiffs' fraudulent inducement claims against Mastercraft and MS (Counts XVI-XVII) also relate to the contract and are referable to arbitration. The FAA's "statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract," unless the claim goes directly to the making of the arbitration agreement itself. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967) (finding that claim for fraudulent inducement was referable to arbitration where arbitration clause was broad and governed "claims arising out of or relating to" the contract). Plaintiffs' negligent inducement claims are governed by the arbitration clause because it challenges inducement into the contract generally and does not challenge the making of the arbitration agreement. Therefore, the negligent inducement claims are referable to arbitration.

Likewise, Plaintiffs' fraudulent misrepresentation claims against Mastercraft and MS (Counts XIII-XIV) are also referable to arbitration. A claim that a party made false statements knowing that another party would rely on those statements is referable to arbitration. *See* Senti, 2007 WL 1174076, at *8; *see also* Sunkist, 10 F.3d at 758 n.3 (affirming referral to arbitration of fraudulent misrepresentation claim); Hireshenson v. Spaccio, 800 So.2d 670, 674 (Fla. 5th DCA 2001) (finding that misrepresentation claims were arbitrable); Cuningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc., 776 So.2d 940, 943 (Fla. 3d DCA 2000) (same); Sherson/Lehman Bros., Inc. v. Ordonez, 497 So.2d 703, 704 (Fla. 4th DCA 1986) (same). Furthermore, the essence of the claim is that the fraudulent misrepresentations induced the Ben-Yishays to enter into the Agreements. Therefore, the

claim is best construed as a claim for fraudulent inducement and is referable to arbitration for the reasons stated above. Nevertheless, however construed, the fraudulent misrepresentation claim is referable to arbitration.

Plaintiffs' claims for equitable lien and/or constructive trust against Mastercraft and MS (Counts XXV-XXVI) must also be referred to arbitration. Plaintiffs' allegations concerning these claims are based directly on Mastercraft and MS's failure to undertake their obligations under the Agreements. Therefore, these claims relate to the Agreements and are referable to arbitration. See Austin South I., Ltd. v. Barton-Malow Co., 799 F. Supp. 1135, 1138 (M.D.Fla. 1992) (stating that claim for equitable lien was referred to arbitration); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Shubert, 577 F. Supp. 406, 408 (M.D.Fla. 1983) (referring claim for constructive trust to arbitration).

Plaintiffs argue that the arbitration clause is not valid because the contract as a whole evinces a lack of mutual obligation to submit to arbitration. When a contract contains an arbitration clause, "'both parties must be bound or neither is bound'" Hull v. Norcom, Inc., 750 F.2d 1547, 1551 (11th Cir. 1985) (citation omitted). "[T]he consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some of the specified claims." Id. Thus, "'it is consideration that is necessary, not mutuality of obligation.'" Id. (citation omitted). However, "'that does not mean that the mutual promises must create in each of the parties identical rights and obligations or that the parties must be bound in the exactly same manner.'" Id. (citation omitted).

Here, the Agreements contain a default provision which states that in the event of a default by the Ben-Yishays, Mastercraft and MS may "proceed in equity to enforce Seller's rights." Plaintiffs assert that the default provision creates a lack of mutuality that is fatal to the validity of the arbitration clause. However, the arbitration clause states that all parties "agree that arbitration shall

9

be the sole and exclusive forum for resolving all claims." Even if Mastercraft and MS may seek equitable relief outside of arbitration in the event of default, both parties have agreed to arbitrate with respect to all other claims. The fact that the parties may not be bound in exactly the same manner does not affect the validity of the arbitration clause. Therefore, the arbitration clause is valid because all parties have provided consideration through their promises to submit to arbitration.

      B.      <u>Motion to Dismiss and/or Compel Arbitration as to Claims Against Lap</u>

Plaintiffs' claims against Lap include fraudulent misrepresentation (Count XV), fraudulent inducement (Count XVIII), and conversion (Count XXI). These claims are brought against Lap, the managing member of Mastercraft, an LLC, and president of MS, a corporation. "A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character; he is not liable for torts committed by or for the corporation unless he has participated in the wrong." <u>Aboujaoude v. Poinciana Dev. Co. II</u>, 509 F. Supp.2d 1266, 1277 (S.D.Fla. 2007) (quotation marks omitted). "If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort. A contrary rule would enable a director or officer of a corporation to perpetrate flagrant injuries and escape liability behind the shield of his representative character, even though the corporation might be insolvent or irresponsible." <u>Id.</u> (quotation marks omitted). Therefore, although Lap is a member and officer of Mastercraft and MS, the potential for liability exists as to the alleged torts.

          1. Fraudulent Inducement

Plaintiffs have failed to state a claim against Lap for fraudulent inducement because the claim is barred by the economic loss rule. "The economic loss rule bars a tort action where a defendant has

10

not committed a breach of duty apart from a breach of contract . . . absent personal injury or property damages. New Lenox Indus., Inc. v. Fenton, 510 F. Supp.2d 893, 907 (M.D.Fla. 2007) (citations omitted). In 1996, the Florida Supreme Court held that a claim for fraudulent inducement is typically not barred by the economic loss rule because it requires proof of facts separate from a breach of contract claim. HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996). However, since then, courts have found that "'statements or misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot constitute a basis on which to bring the fraud claim.'" Flamenbaum v. Orient Lines, Inc., No. 03-22549-CIV (CMA), 2004 WL 1773207, at *7 (S.D.Fla. 2004) (quoting Rosa v. Amoco Oil Co., 262 F. Supp.2d 1364, 1366 (S.D.Fla. 2003)). Moreover, "[w]hen alleged misrepresentations are discussed and incorporated into a written contract containing a merger clause that supercedes all prior representations and agreements, the economic loss rule bars recovery for fraudulent inducement. Topp, Inc. v. Uniden Am. Corp., 513 F. Supp.2d 1345, 1348 (S.D.Fla. 2007) (stating that a merger clause bars a fraudulent inducement claim because "[a] party cannot take a position contradictory to a contract that plainly and unambiguously states that there are no other agreements or representations other than those contained in the contract").

Plaintiffs cannot state a claim for fraudulent inducement because the claim is barred by the economic loss rule. Each of the allegedly fraudulent representations on which Plaintiffs allegedly relied are the same obligations memorialized in the agreement. Moreover, the Agreements contain a merger clause which explicitly and unambiguously supercedes all prior verbal and written agreements. First Agreement, ¶ 23; Second Agreement, ¶ 20, Third Agreement, ¶ 20; see Topp, 513 F. Supp.2d at 1348; Lydia Security Monitoring, Inc. v. Alarm One, Inc., No. 07-80145 CIV (KLR),

11

2007 WL 2446889, at *4 (S.D.Fla. 2007). Therefore, the fraudulent inducement claim is barred by the economic loss rule because it is not independent of the breach of contract claims and the merger clause restricts reliance on prior representations. See Flamenbaum, 2004 WL 1773207, at *7.

    2. Fraudulent Misrepresentation

  Likewise, Plaintiffs' claims for fraudulent misrepresentation are barred by the economic loss rule. "'Misrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action in tort, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement.'" Cayenta Canada, Inc. v. Orange County, Fla. Bd. Of County Com'rs, No. 01-cv-1232-Orl-22KRS (ACC), 2002 WL 34373972, at *3 (M.D.Fla. 2002) (quoting Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74, 78 (Fla. 3d DCA 1997)). "[W]here the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the economic loss rule applies and the parties are limited to pursuing their rights in contract." Id. (citation omitted). Plaintiffs' fraudulent misrepresentation claims assert that the misrepresentations consisted of the promises made in the agreement, and that Plaintiffs entered into the Agreements based on those unfulfilled promises. Therefore, Plaintiffs' claim against Lap for fraudulent misrepresentation must be dismissed because it is not an independent claim and is barred by the economic loss rule.

  This analysis is not affected by the fact that Lap, a member of Mastercraft and officer of MS, was not a signatory of the Agreements. The rationale of the economic loss rule is to limit "a party to the recovery of purely economic damages suffered in a contractual setting." Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602, 611 (Fla. 2d DCA 1997). This rationale, which limits the Ben-Yishays to the damages recoverable from breach of the Agreements, applies with

equal force whether the fraudulent inducement and misrepresentation claims are asserted against Mastercraft and MS, or against Lap. To find otherwise would lead to incongruous result that the economic loss rule would bar applicable tort claims against a corporation, but not against the directors or officers who negotiated the agreement. Such an outcome would be inconsistent with the rationale of the economic loss rule and would eviscerate its application in cases where a corporation is a party to the agreement. This holding is consistent with the finding of the District Court of Appeals of Florida in Vesta Construction & Design, L.L.C. v. Lotspeich & Associates, Inc., in which the Court stated that "when a suit is barred against a corporation by the contractual privity economic loss rule, the contracting party cannot bypass the rule by suing corporate employees." 974 So.2d 1176, 1180 (Fla. 5th DCA 2008). "Given that a corporation can only act through its employees, it would completely undermine the contractual privity economic loss rule to allow any party which contracts with a corporation to avoid the rule by simply bringing its tort claim directly against the corporate officers or employees tasked with performing the contract on behalf of the corporation." Id. Therefore, Plaintiffs' claims against Lap for fraudulent inducement and fraudulent misrepresentation must be dismissed.

    3. Conversion

Plaintiffs' conversion claim against Lap is not barred by the economic loss rule. An obligation to pay money based on a breach of contract is generally barred by the economic loss rule because it does not entail a breach of duty apart from the obligations of the contract. Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp.2d 1350, 1362 (M.D.Fla. 2007). A limited exception to this rule applies when the "defendant's acts were not merely a failure to perform, but an affirmative and intentional act of converting the funds to his own use by allegedly stealing the

monies to which he was entrusted." Id. (quotation marks omitted). Here, the Ben-Yishays allege that their earnest money deposits totaling $995,000 were never returned and that Lap converted the funds for his own personal use. Lap's personal use of the funds is an allegation of an affirmative and intentional act that constitutes the breach of a duty beyond the obligations of the Agreements. Therefore, Plaintiffs have sufficiently alleged a claim for conversion against Lap.

Plaintiffs' conversion claim against Lap cannot be referred to arbitration. When a non-signatory brings a claim against a signatory in reliance on an agreement containing an arbitration clause, estoppel may require the non-signatory to arbitrate. World Rental & Sales, LLC v. Volvo Constr. Equip., 517 F.3d 1240, 1248 (11th Cir. 2008); see Blinco v. Green Tree Serv., LLC, 400 F.3d 1308, 1312 (11th Cir. 2005). Here, Lap, a non-signatory to the Agreements, seeks to compel the Ben-Yishays to arbitrate the dispute. However, Lap does not fall squarely within the rule enunciated in World Rental. Lap is not bringing a claim against the Ben-Yishays but rather asserting a defense against a tort claim. The tort claim is tangentially connected to the Agreements inasmuch as the transaction governed by the Agreements gave rise to the circumstances in which the allegedly tortious conduct was perpetrated. However, as stated above, the conversion claim is independent from the Agreements. Therefore, this Court need not address the question of whether a non-signatory may compel a signatory to an agreement with an arbitration clause to arbitrate based on the assertion of a defense to a claim brought in reliance on the agreement. Plaintiff's conversion claim does not rely on the Agreements and the rule stated in World Rental does not apply. Therefore, the conversion claim against Lap cannot be referred to arbitration.

However, resolution in arbitration of the conversion claims against Mastercraft and MS is likely to give rise to a factual inquiry and findings germane to the conversion claim against Lap.

Therefore, the conversion claim against Lap will be stayed pending resolution of the claims referred to arbitration. See Lisa, S.A. v. Mayorga, 232 F. Supp.2d 1325, 1326 (S.D.Fla. 2002) (stating that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel and for litigants.") (quotation marks omitted)).

      C.    Motion to Dismiss Claims Against Waterline

Plaintiffs bring a claim for equitable lien and/or constructive trust against Waterline (Count XXIV). "'To impose a constructive trust, there must be (1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment.'" Whiting-Turner Contracting Co. v. Elec. Mach., No. 06-CIV-114-T-17-MSS (EAK), 2006 WL 1679357, at *2 (M.D.Fla. 2006) (quoting Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022, 1025 (Fla. 4th DCA 1996)). A confidential relationship exists "'where confidence is reposed by one party and a trust accepted by the other.'" Hutson v. Brooks, 646 So.2d 276, 277 (Fla. 2d DCA 1994) (quoting Traub v. Traub, 102 S.2d 157 (Fla. 2d DCA 1958)). A confidential relationship may exist between a "husband and wife, parent and child, guardian and ward, attorney and client, principal and agent, or partner and partner." Claycomb v. Combs, 676 So.2d 523, 525 (Fla. 2d DCA 1996). Here, no confidential relationship existed between the Ben-Yishays and Waterline. Waterline was not a party to the Agreements and no communication between the Ben-Yishays and Waterline is alleged. Even if Waterline is the alter ego of Mastercraft and MS, as Plaintiffs allege, the Agreements were arms-length transactions and do not give rise to a confidential relationship. See Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1168 (11th Cir. 1997) (finding that arms-length transaction did not give rise to a confidential relationship). Therefore, Plaintiffs have failed to

15

adequately plead a claim for constructive trust.

Plaintiffs have also failed to sufficiently plead a claim for an equitable lien. An equitable lien is "a charge or encumbrance upon the land 'so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists.'" Lake Placid Holding Co. v. Paparone, 508 So.2d 372, 377-78 (Fla. 2d DCA 1987) (quoting Jones v. Carpenter, 106 So. 127, 129 (Fla. 1925)). [A]n equitable lien can only exist when a party has a special right to a particular property and there is no adequate remedy at law." Garcia v. Santa Maria Resort, Inc., 528 F. Supp.2d 1283, 1296 (S.D.Fla. 2007). Here, Plaintiffs seek an equitable lien over property that is unrelated to the Agreements. However, the Ben-Yishays have no special right to an equitable lien over the property of a non-signatory, that is entirely unrelated to the Agreements. Moreover, Plaintiffs have an adequate remedy at law in the return of the earnest money deposits and other damages that may have accrued as a result of the failed Agreements. Therefore, Plaintiffs' claim for an equitable lien must be dismissed.

D.   Motion to Dismiss Claims Against Grosso PA and Grosso

Plaintiffs have sufficiently pleaded claims for breach of fiduciary duty against Grosso PA and Grosso (Counts XXVII and XXVIII). With respect to the earnest money deposits, each of the Agreements states that "[b]uyer hereby acknowledges that the Deposit shall not be held by Seller and shall be used in connection with the construction." First Agreement Addendum, ¶ 1(c); Second Agreement, ¶ 1(b); Third Agreement, ¶ 1(b). Plaintiffs assert that the portion of this provision stating that "the Deposit shall not be held by Seller" required the funds to be placed in escrow, thereby giving rise to a fiduciary duty that the funds be disbursed according to the terms of the

16

Agreements. Grosso PA and Grosso contend that they owed no fiduciary duty to Plaintiffs because the provision concerning the use of the earnest money deposits simply means that Mastercraft and MS were free to use the funds to begin construction. Grosso PA and Grosso further contend that this interpretation is supported by the fact that the Agreements called for the earnest money deposits to be delivered to Mastercraft and MS, and that the checks were made payable to Mastercraft.

The proper interpretation of this provision is not a matter that can be resolved on a motion to dismiss for failure to state a claim. Interpretation of a clear and unambiguous contractual provision is a question of law properly decided on summary judgment. *See* <u>Lockheed Martin Corp. v. Galaxis USA, Ltd.</u>, 222 F Supp.2d 1315, 1323 (M.D.Fla. 2002). However, a motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. <u>Milburn</u>, 734 F.2d at 765. Therefore, construing the complaint in the light most favorable to the Plaintiffs, the Ben-Yishays have adequately alleged a claim for breach of fiduciary duty against Grosso PA and Grosso.

However, the claims already referred to arbitration, although comprising distinct claims against different Defendants, arise from the same underlying transaction as the claims against Grosso PA and Grosso. Therefore, the factual inquiries and findings made in arbitration will also be germane to the breach of fiduciary duty claims against Grosso PA and Grosso. Particularly, resolution of the conversion claims against Mastercraft and MS will clarify the obligations contained in the Agreements concerning the appropriate use of the earnest money deposits. Therefore, the breach of fiduciary claims against Grosso PA and Grosso will be stayed pending resolution of the claims referred to arbitration. *See* <u>Mayorga</u>, 232 F. Supp.2d at 1326.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant Waterline Development LLC's Motion to Dismiss Complaint and/or Motion to Compel Arbitration (dkt # 24) is GRANTED IN PART. Count XXIV is hereby DISMISSED. It is further

ORDERED AND ADJUDGED that Defendant Joseph D. Grosso, Jr., P.A. and Joseph D. Grosso, Jr.'s Motion to Dismiss Counts XXVII and XXVIII (dkt # 25) is DENIED. These counts are STAYED pending resolution in arbitration of the Parties' other claims. It is further

ORDERED AND ADJUDGED that Defendants Mastercraft Development LLC, Mastercraft Services, Inc., and Perry Lap's Motion to Dismiss Complaint and Compel Arbitration (dkt # 26) is GRANTED IN PART and DENIED IN PART. Counts I through XIV, XVI, XVII, XIX, XX, XXV and XXVI are referred to arbitration. Proceedings on these counts are STAYED pending resolution in arbitration. Counts XV and XVIII are DISMISSED. The motion is DENIED in all respects as to Count XXI. Count XXI is STAYED pending resolution in arbitration of the Parties' other claims. All surviving claims are stayed for a period of 90 days from the date of this Order. The Clerk of the Court is ordered to administratively CLOSE this case. Upon completion of arbitration, the Parties may seek to reopen this cause for further proceedings on any claim which this Court has not referred to arbitration. If within 90 days arbitration has not been completed, the Parties may seek an extension of time for good cause shown. If the Parties do not seek to reopen the case or seek an extension of time within 90 days, the case shall be dismissed.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of April, 2008.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record